IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CESARE PULEO, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>NIBCO, INC.,<br><br>    Defendant. | JURY DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff Cesare Puleo ("Plaintiff"), individually and on behalf of himself and all others similarly situated throughout the country, by his attorneys, alleges the following on his personal knowledge as to matters related to Plaintiff, and upon information and belief, through the investigation of Plaintiff's counsel, as to all other matters:

## NATURE OF THE ACTION

1. This case involves faulty cross-linked polyethylene ("PEX") plumbing tubes ("PEX Tubing"), bronze, brass and polyphenylsulfone fittings which connect the PEX Tubing ("PEX Fittings"), and stainless steel, copper and polybutylene crimps and clamps which join the PEX Tubing and PEX Fittings ("PEX Clamps;" collectively, "PEX Products"). The PEX Products at issue are each manufactured, warranted, marketed and sold by defendant NIBCO, Inc. ("NIBCO" or "Defendant"), and fail prematurely due to undisclosed design and/or manufacturing defects.

2. Plaintiff brings this class action against NIBCO on behalf of himself and all individuals and entities that own structures physically located in New York in which PEX Products manufactured or sold by NIBCO was or are currently installed (the "Class").

3. Plaintiff and the Class suffered damages proximately caused by NIBCO's PEX Products, which were used in Plaintiff's and Class members' homes and other structures.

1

4. NIBCO manufactures and advertises its PEX Products for use in plumbing systems throughout the United States. NBICO has touted the durability of its PEX Products, claiming that its PEX Tubing was the highest quality PEX tubing available and that its cross chemical bonding process gave it "superior characteristics."

5. NIBCO warrants that its PEX Tubing will be free from any defects in materials and workmanship for a period ranging from ten (10) years to twenty-five (25) years, dependent upon whether the entire plumbing system was composed of solely of NIBCO products or instead NIBCO components in conjunction with other manufacturers' PEX products. The construction industry and consumers appropriately rely on the Defendant's pledge to mean a product with a 10-year or 25-year warranty is expected to have a usable lifetime of at least 10 years or 25 years, respectively.

6. However, because of poor material selection, defective development and design, lack of adequate testing and/or defective manufacturing, NIBCO's PEX Products prematurely fail on a routine basis. Specifically, the PEX Tubing is predisposed to premature oxidative degradation, failure and rupture, the PEX Fittings are predisposed to prematurely fail as a result of dezincification corrosion, and the PEX Clamps are predisposed to prematurely fail as a result of chloride-induced stress corrosion cracking. Consequently, the PEX Products degrade, fail and leak, causing flooding and extensive property damage after only a few years of service.

7. Contrary to NIBCO's representations regarding the high quality of its PEX Products, NIBCO knows and has known of the specific design, material and/or manufacturing defects alleged herein, that the PEX Products were not suitable for uses within water-carrying plumbing systems, and that there was a substantial risk that its PEX Products would degrade, fail and leak.

8. When any of these components fail, water is released which causes significant damage to surrounding property and/or prevents the plumbing system from functioning as intended.

9. NIBCO has failed to disclose these risks to consumers, including Plaintiff and the Class, and has breached its warranty by refusing to fully or adequately compensate property owners who have been injured as a result of said defects.

10. As a result of the defects in NIBCO's PEX Products, Plaintiff and the Class have suffered and continue to suffer damages, including significant real and personal property damage caused by flooding from degraded and leaking PEX Products. In addition, Plaintiff and the Class have suffered harm in the form of the loss of the benefit of the bargain, in that they paid for a product that was worth less than what was represented by NIBCO. Plaintiff and the Class would not have purchased their PEX Products, or homes, residences, buildings or other structures in which the PEX Products had been installed, had they known of the defects at the time of sale. Furthermore, Plaintiff and Class members must replace and discard their PEX Products sooner than reasonably expected.

11. The degradation and failure of the PEX Products has also caused damage to the value of Plaintiff's real property in that the value of the Plaintiff's home has been stigmatized and diminished as compared to comparable homes which do not have the defective PEX Products.

12. Plaintiff seeks to recover, for themselves and the Class, all damages proximately caused by NIBCO's PEX Products, including all costs associated with repairing, removing and/or replacing their PEX Products, as well as the costs of repairing any damage to their real and personal property caused by the failure of the PEX Products to perform as represented and warranted. Plaintiff also seeks injunctive relief requiring NIBCO to modify its unfair and fraudulent practices so as to uniformly provide relief in accordance with its obligations under the law.

**PARTIES**

13. Plaintiff Cesare Puleo is an individual who resides in Merrick, New York. He owns a two-story, single family home built in 2012 or 2013 with NIBCO Products, including PEX Tubing,

PEX Fittings and PEX Clamps.

14. On January 4, 2018, Plaintiff's PEX Tubing ruptured in the basement ceiling of Plaintiff's home, causing several inches of water accumulation and damage to Plaintiff's home in excess of $30,000.

15. Independent testing of Plaintiff's NIBCO PEX Tubing showed that despite NIBCO's claim that the PEX tubes are "chlorine-resistant" and "corrosion-resistant," Plaintiff's PEX pipes suffered from an "oxidative" attack from chlorinated water as a result of NIBCO's non-uniform mixing of antioxidants into the walls of the tubes, which caused the tubes to become brittle and break, resulting in the pipe bursting and the subsequent damage to Plaintiff's home.

16. Plaintiff would not have purchased and installed the PEX Products and exposed his real and personal property to flooding and water damage, had NIBCO disclosed the propensity for the PEX Products to fail.

17. Defendant NIBCO, Inc. is an Indiana corporation with its principal place of business located at 1516 Middlebury Street Elkhart, Indiana 46516-4740. NIBCO manufactures, markets and advertises the PEX Products for use in commercial, industrial and institutional construction, and for the residential and irrigation markets throughout the United States and New York.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York and Defendant is a citizen of the State of Indiana; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

19. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, *et seq*. because a substantial part of the events giving rise to the claim occurred in this District. Additionally, NIBCO regularly conducts substantial business in this District, including the sale and distribution of its PEX Product.

## SUBSTANTIVE ALLEGATIONS

### A.   NIBCO's Representations

21. NIBCO sells various plumbing products including the PEX Products and other plumbing accessories.

22. PEX is an acronym for cross-linked polyethylene. "PE" stands for Polyethylene, the raw material, and the letter "X" in the acronym refers to the cross-linking "chemical bonding" of the polyethylene across its molecular chains.

23. NIBCO has touted its PEX Tubing as possessing "superior characteristics" and being "the highest quality PEX tubing available today" due to NIBCO's cross-linking manufacturing process:

> Cross-linking is the process that gives NIBCO DURA-PEX tubing its superior characteristics. The long, simple chains in a polyethylene molecule are altered to form a more stable, three-dimensional network. This process changes the material from a thermoplastic into a thermoset. A thermoset differs from a thermoplastic because a thermoset cannot be melted and then reformed. This change in molecular structure creates a polyethylene product with enhanced mechanical properties. Many manufacturers use a chemical additive to activate the crosslinking process, but NIBCO employs a sterile, electron beam process that provides superior properties. This process, which is called PEX-c, delivers the highest quality PEX tubing available today, while reducing the use of chemicals.[1]

### B.   NIBCO's Defective PEX Tubing

24. NIBCO's PEX Tubing comes with an express warranty (the "Warranty") that

---

[1] *See* NIBCO, NIBCO® PEX® Piping Systems, Catalog C-PEX-0715, at 4 (available at nibco.com/WorkArea/DownloadAsset.aspx?id=1230) (last viewed September 28, 2018).

warrants against defects in the materials and workmanship of the Tubing. Specifically, NIBCO's Warranty states, *inter alia*, the following:

> NIBCO INC. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor. This 25-year warranty is voided if any non-NIBCO products are used in the PEX system. NIBCO INC. warrants NIBCO PEX tube, when used under normal conditions, use and service in potable water and radiant heat systems with brass insert fittings meeting NSF/ANSI 61, ASTM F1807 and ASTM F877 to be free from defects in materials and workmanship for a period of ten (10) years form the date of purchase.[2]

25.  Plaintiff complied with his obligations under the Warranty. NIBCO, however, has failed to fulfill its obligation to replace the defective PEX Tubing and compensate Plaintiff for the foreseeable property damage it caused.

26.  To the extent that NIBCO's Warranty purports to limit or eliminate certain contractual rights afforded to Plaintiff (*e.g.*, on the type of recoverable damages or the ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

27.  Despite NIBCO's attestations to the quality and superiority of its PEX Tubing, consumers all across the United States have experienced water damage and catastrophic PEX Tubing failures caused by slow growth cracking mechanisms indicative of oxidative failure and/or creep rupture. These slow growth cracking mechanisms have been caused by the insufficient stabilization and/or improper cross-linking of the PEX material used by NIBCO to manufacture its PEX Tubing.

28.  NIBCO knew or should have known that the PEX Tubing it manufactured, marketed, warranted and sold was susceptible to premature failure. The design, materials choices,

---

[2] *See* Exhibit 1.

6

and manufacturing practices of the PEX Tubing have created damaged products that begin to degrade on their first day of use, even if properly installed in their intended environment.

### C. Failure of NIBCO's Defective PEX Fittings and PEX Clamps

29. In addition to its PEX Tubing, NIBCO also manufactures and sells the fittings, crimps, clamps, valves and installation accessories required to install a completed residential or commercial plumbing system.

30. NIBCO manufactures and sells PEX Fittings that purport to conform to ASTM standard F1807. The ASTM is a globally recognized organization (formerly known as the American Society for Testing and Materials) that develops international voluntary consensus standards. The F1807 standard applies to metal insert fittings for use with SDR9 cross-linked polyethylene (PEX) tubing, which is manufactured and/or sold by NIBCO.

31. F1807 insert fitting systems typically use a crimped stainless steel or copper ring to secure the PEX tubing to the fitting. The brass alloy fitting is inserted into the PEX tubing using a special tool that crimps a copper ring or stainless steel clamp around the outside of the tubing, which, in turn, creates a seal between the PEX tubing and the brass fitting.

32. Not only does NIBCO manufacture and sell ASTM F1807 fittings, but it encourages consumers to purchase and install the fittings with its PEX Tubing. NIBCO's Warranty covers 10 years if only its PEX Tubing is installed, but NIBCO increases its Warranty coverage to 25 years if its PEX Fittings, valves, and installation accessories (including PEX Clamps) are used in conjunction with its PEX Tubing.

33. NIBCO's ASTM F1807 fittings are identifiable by a "NIBCO" stamp placed on the brass insert fittings.

34. NIBCO's PEX Tubing comes with an express warranty that warrants against defects in the materials and workmanship of the PEX Fittings and accessories. Specifically, NIBCO's

Warranty states, *inter alia*, the following:

> NIBCO Inc. warrants that when NIBCO® PEX tube is used with NIBCO® PEX fittings, and NIBCO® valves and installation accessories, they will, under normal conditions, use and service in potable water and radiant heat systems, be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor.

35. Plaintiff complied with his obligations under the Warranty. NIBCO, however, has failed to fulfill its obligation to replace any defective PEX Fittings or PEX Clamps and compensate Plaintiff and Class members for the property damage the PEX Fittings and PEX Clamps caused.

36. To the extent that NIBCO's Warranty purports to limit or eliminate certain contractual rights afforded to Plaintiff (*e.g.*, on the type of recoverable damages, or the ability to recover property damages), such limitations are unconscionable and unenforceable under the circumstances.

37. Consumers who purchased and installed NIBCO's PEX Fittings and PEX Clamps have experienced cracking and leaking of these products in their residential and commercial plumbing systems, causing water leaks that have and will cause extensive damage to homes, businesses and personal property of the consumers as a result of water leaks from the plumbing system.

38. During the foreseeable and intended use, the NIBCO PEX Fittings are exposed to elements in residential and commercial plumbing systems which cause the NIBCO PEX Fittings to corrode and prematurely fail as the result of dezincification[3] corrosion.

39. After undergoing dezincification, the PEX Fittings prematurely fail and become brittle, sponge-like and/or plugged. As a result, a continuous network of small openings develops in the PEX Fittings, allowing water to weep through the walls of the fitting. Weakened fittings

---

[3] Dezincification refers to the corrosion and weakening of brass objects when zinc is dissolved out of the brass alloy.

8

may crack or break, causing significant water damage. They may become plugged with corroded materials causing a low water pressure condition. Corroded fittings may also allow chloride-rich water to weep through the wall of the fittings, wetting the adjacent PEX Clamp and causing the PEX Clamp to fail due to chloride-induced stress corrosion cracking.

40. NIBCO knew or should have known that the PEX Fittings and PEX Clamps it manufactured, marketed, warranted and sold were susceptible to premature failure through dezincification corrosion and chloride-induced stress corrosion cracking, respectively.

41. The design, materials choices, and manufacturing practices of the PEX Fittings and PEX Clamps have created damaged products that begin to fail on their first day of use, even if properly installed in their intended environment. Upon information and belief, Defendant no longer advertises these defective PEX Fittings on its website due to the design defect and susceptibility to dezincification. Currently, Defendant advertises fittings that are "dezincification resistant."[4]

42. The stainless steel PEX Clamps fail slowly over time due to a fracture mechanism known as "chloride-induced stress corrosion cracking," which is caused by defective design and/or defective manufacturing by Defendant. For stress corrosion cracking to occur, a susceptible material must be simultaneously exposed to tensile stress and chlorides.

43. The failing PEX Clamps are manufactured from a stainless steel alloy known to be susceptible to stress corrosion cracking in the presence of chlorides, and these clamps are used in a design where simultaneous exposure to static tensile stress and chlorides is (or should have been) reasonably anticipated. Stress corrosion cracking could not occur in the PEX Clamps if the clamps were manufactured from a material that is not susceptible to chloride-induced stress corrosion

---

[4] *See, e.g.,* http://ww.nibco.com/Fittings/Press-Fittings-and-Tools/Fittings/ (claiming NIBCO press-fittings are "Dezincification-resistant").

9

cracking. Alternate materials that are generally immune to chloride-induced stress corrosion cracking (exhibiting little or no susceptibility) and that are approved for plumbing applications in the United States were readily available at little or no additional cost at the time the failing clamps were manufactured by NIBCO.

44. Additionally, the failing PEX Clamps are designed in a manner that allows tensile stresses to exceed the yield strength of the material during normal installation (meaning that the tensile stresses are so high that the clamp permanently changes shape during installation, through a process known as "necking"). The clamps are designed in such a way that the tensile stresses created during normal and proper installation promote chloride-induced stress corrosion cracking, and the tensile stress condition is made even more detrimental by other aspects of the clamp design and/or manufacture (*e.g.,* smearing of surface material, sharp edges, etc.). Stress corrosion cracking cannot occur in the absence of static tensile stress, so the PEX Clamp could not have failed in the manner that it did if commonly accepted principles of engineering design and manufacturing had been employed to sufficiently reduce tensile stresses.

45. NIBCO knows or should have known that chlorides from any source would be problematic for the stainless steel PEX Clamps. NIBCO failed to disclose these vulnerabilities.

## CLASS ACTION ALLEGATIONS

46. This action is brought on behalf of Plaintiff, individually and as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3), on behalf of a class defined as follows:

> All individuals and entities that own structures physically located in New York in which PEX Products manufactured or sold by NIBCO was or are currently installed (the "Class"). Excluded from the Class is NIBCO, any entity in which NIBCO has a controlling interest, and NIBCO's legal representatives, assigns and successors.

47. Plaintiff reserves the right to redefine the Class (and/or Subclasses) prior to the certification of the Class.

48. The Class is so numerous that individual joinder of all Class members is

impracticable. The actual number of Class members is unknown at this time, but numbers in the thousands.

49. There are numerous questions of law and fact that are common to Plaintiff and the Class that are susceptible to common answers by way of common proof and that predominate over any questions that may affect individual Class members, including, without limitation:

    a.    Whether NIBCO's PEX Products are defective;

    b.    Whether NIBCO's PEX Products were defectively designed and/or manufactured for their intended purpose;

    c.    Whether NIBCO's PEX Products were fit for their intended purpose;

    d.    Whether NIBCO's PEX Products were merchantable;

    e.    Whether NIBCO knew or should have known of the defect in the PEX Products prior to putting them into the stream of commerce for purchase by Plaintiff and the Class;

    f.    Whether NIBCO properly advises consumers about the likelihood of the PEX Products premature failure;

    g.    Whether NIBCO owes a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the PEX Products;

    h.    Whether NIBCO owed a duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class defective PEX Products;

    i.    Whether NIBCO breached its duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class defective PEX Products;

    j.    Whether NIBCO owed a duty to Plaintiff and the Class by failing to provide adequate instructions and warnings for safe and proper use of the PEX Products, and sufficient information regarding the PEX Products' reasonable expected life span and information related to its maintenance and replacement;

    k.    Whether NIBCO breached its duty Plaintiff and the Class by failing to provide adequate instructions and warnings for safe and proper use of the PEX Products, and sufficient information regarding the PEX Products' reasonable expected life span and information related to its maintenance and replacement;

    l.    Whether NIBCO owed a duty to Plaintiff and the Class by failing promptly to remove the defective PEX Products from the marketplace or take other remedial action;

11

      m.    Whether NIBCO breached its duty to Plaintiff and the Class by failing promptly to remove the defective PEX Products from the marketplace or take other remedial action including warning Plaintiff and the Class; ;

      n.    Whether the PEX Products fail to perform in accordance with the reasonable expectations of ordinary consumers;

      o.    Whether the PEX Products fail to perform as advertised, marketed and warranted;

      p.    Whether Plaintiff and the putative Class are entitled to relief under NIBCO's express warranties;

      q.    Whether NIBCO breached the terms of its express warranties;

      r.    Whether NIBCO breached its implied warranties to Plaintiff and the Class by advertising, marketing and selling PEX Products that were not of a merchantable quality, nor fit for the ordinary purpose for which they were sold;

      s.    Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages for the replacement and remediation of the PEX Products;

      t.    Whether NIBCO has been unjustly enriched by its conduct, as alleged herein;

      u.    Whether NIBCO should be required to notify all Class members about their defective PEX Products; and

      v.    The appropriate nature of class-wide equitable relief.

50.    Plaintiff's claims are typical of the claims of the Class because, *inter alia*, Plaintiff and all members of the putative Class own defective PEX Products.

51.    Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution of consumer class actions. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class, and have the financial resources to do so.

52.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making

appropriate both declaratory and injunctive relief with respect to the Class as a whole. The members of the Class are entitled to injunctive relief as set forth below.

53. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Furthermore, the likelihood that individual members of the Class will prosecute separate actions is remote given the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of damages at issue for most individual Class members. This action will be prosecuted in a manner to ensure the Court's able management of this case as a class action, and Plaintiff knows of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

## **FRAUDULENT CONCEALMENT**

54. At all relevant times, NIBCO affirmatively concealed from Plaintiff and the Class the defects inherent in the PEX Products.

55. NIBCO had a duty to inform Plaintiff and the Class of the defects. Specifically, NIBCO has known for years of the problems and defect outlined herein through various complaint forums (including, without limitation, its own warranty program) and as the result of claims being filed against NIBCO related to the defects by insurance companies. Notwithstanding its duty to inform Plaintiff and Class members, NIBCO has never disclosed the defects to Plaintiff and the Class. To the contrary, NIBCO has consistently maintained that it is the "most reliable name in flow control,"[5] its PEX Products are "chlorine-resistant, corrosion- resistant, freeze-damage and

---

[5] *See* http://blog.nibco.com/the-flo-boss-line-of-balancing-valves.

abrasion-resistant,"[6] and that "[t]he excellent thermal properties of PEX are ideal for hot and cold water distribution."[7]

56. Plaintiff and the Class could not have discovered the defect or NIBCO's attempts to avoid disclosure of the defects alleged herein. Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiff or the Class members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

57. In addition, NIBCO is estopped to plead any statute of limitations because it failed to disclose facts that it was obligated to disclose concerning the defects in the PEX Products. NIBCO actively concealed and misrepresented to Plaintiff and the Class members facts that were essential to understanding that Plaintiff and the Class members had claims against NIBCO, and NIBCO thus acted to prevent Plaintiff and the Class members from learning that they possessed claims against NIBCO. Had Plaintiff and the Class been aware of the facts which NIBCO misrepresented and concealed, they would have commenced suit against NIBCO before the running of any statute of limitations alleged to be applicable to this case.

58. NIBCO is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its fraudulent concealment.

## FIRST CAUSE OF ACTION
## Breach of Express Warranty
## (On Behalf of Plaintiff and the Class)

59. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

60. Defendant's PEX Products contained an express warranty with every purchase.

---

[6] *See* https://www.whiteheadindustrial.com/p-34691-pex-c-pipe-multiple-sizes-lengths.aspx.
[7] *Id.*

61. Defendant warranted that the PEX Products would be free from defects in materials and workmanship and such warranty became part of the basis of the transaction between Plaintiff and the putative Class and Defendant.

62. Defendant's express warranty states that its PEX Products will be free from defects in materials and workmanship for a period of twenty-five (25) years from the date of purchase when installed by a licensed professional contractor and when installed along with NIBCO PEX Fittings and NIBCO valves and installation accessories.

63. Defendant's express warranty states that its PEX Tubing will be free from defects in materials and workmanship for a period of ten (10) years from the date of purchase if installed by a licensed professional contractor.

64. Defendant expressly warrants that if a consumer's PEX Products are defective, NIBCO will replace them free of charge.

65. Plaintiff and the putative Class complied with the terms of Defendant's express warranty, including any and all conditions precedent and all obligations owed to NIBCO related to installation of the PEX Components. Contrary to the terms of the express warranty, Defendant has failed to replace the defective PEX Products purchased by Plaintiff and the putative Class.

66. As a result of Defendant's conduct, Plaintiff and Class members have suffered an ascertainable loss in the form of direct monetary losses because Defendant has forced Plaintiff to pay for repairs and/or the replacement of the defective PEX Products.

### SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Class)

67. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

68. NIBCO is a merchant of PEX Products.

69. The PEX Products are goods.

70. NIBCO's implied warranty of merchantability accompanied its sale of the PEX Products to Plaintiff and the Class.

71. NIBCO impliedly warranted that its PEX Products were fit for their ordinary use.

72. NIBCO's design and the repeated failure of its PEX Products made them defective and, thus, unfit for the ordinary purposes for which they are used. The PEX Products are not fit for ordinary use.

73. Any effort by NIBCO to disclaim or otherwise limit its responsibility for its defective PEX Products is unconscionable under the circumstances, including because NIBCO knew that its PEX Products were unfit for normal use and had latent defect(s). Through its conduct, NIBCO breached its implied warranty of merchantability and is liable to Plaintiff and the Class.

74. Plaintiff and the Class have sustained damages as a result of NIBCO's breaches.

75. Plaintiff and the Class have provided notice to NIBCO regarding the problems they experienced with their PEX Products and, notwithstanding such notice, NIBCO has failed and refused to remedy the problems. Furthermore, NIBCO had actual knowledge of the defect.

76. As a result of NIBCO's breach of the implied warranty of merchantability, Plaintiff and the Class have incurred damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

77. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

78. NIBCO was negligent in that it failed to use reasonable care when it designed, manufactured, assembled, labeled, tested, distributed and sold its PEX Products.

79. As the manufacturer and/or seller of a consumer product, NIBCO owed a duty to

16

Plaintiff and the Class to provide a safe and quality product, and to provide a product that would perform as it was intended and expected. NIBCO also owed a duty to Plaintiff and the Class to provide adequate instructions and warnings for proper and safe use of the product. NIBCO further owed a duty to provide Plaintiff and the Class with information related to the PEX Products' reasonable expected life span and information related to its maintenance and replacement. NIBCO further owed a duty to Plaintiff and the Classes to remove the defective PEX Products from the marketplace or take other remedial action.

80. NIBCO breached each of these duties.

81. As a direct and proximate result of NIBCO's negligence, Plaintiff and Class members have suffered economic losses for the damages in an amount to be determined at trial for inadequate value, cost of repair and replacement of their defective PEX Products, as well as damage to other real and personal property which resulted from a failure of the PEX Products, causing flooding to the property of the Plaintiff and Class members.

## FOURTH CAUSE OF ACTION
### Negligent Post-Sale Failure to Warn
**(On Behalf of Plaintiff and the Class)**

82. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

83. NIBCO manufactured, designed, sold and/or distributed defective PEX Products to Plaintiff and the Class.

84. NIBCO knew or reasonably should have known that its PEX Products were defective and dangerous and/or were likely to be dangerous when used in a reasonably foreseeable and expected manner.

85. NIBCO knew or reasonably should have known that Plaintiff and the Class would not realize that their PEX Products were defective and posed a danger of causing substantial

17

property damage, both to the product itself, as well as to other real and personal property of Plaintiff and Class members. The dangers posed by the PEX Products were not open and obvious.

86. NIBCO failed to adequately warn of the danger or instruct Plaintiff and the Class that the PEX Products' actual useful life would be far less than reasonably expected.

87. A reasonable manufacturer, distributor, assembler, or seller under the same or similar circumstances would have warned of these dangers.

88. NIBCO's negligent failure to warn or instruct Plaintiff and the Class was a substantial factor in causing the harm to the Plaintiff and Class, placing their real and personal property at risk.

89. As a direct and proximate result of the defective condition of the PEX Products, Plaintiff and the Class have incurred damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

90. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

91. Plaintiff brings this cause of action on behalf of himself and on behalf of the members of the Class.

92. Substantial benefits have been conferred on NIBCO at the expense of Plaintiff and the Class through their purchasing of PEX Products, and NIBCO knowingly and willingly accepted and enjoyed those benefits.

93. NIBCO knew or should have known that payments received from Plaintiff and the Class for the PEX Products were paid with the expectation that the PEX Products would perform as represented.

94. Equity and good conscience militate against permitting NIBCO to retain their ill-

gotten gains from the sale of the PEX Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully request the following relief:

a.   an Order certifying the Class and appointing Plaintiff as the Class Representative, and appointing the undersigned counsel as Class Counsel;

b.   an award of all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

c.   imposition of a constructive trust upon all monies and assets Defendants has acquired as a result of their unjust practices;

d.   an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

e.   an award of reasonable attorneys' fees and reimbursement of costs incurred by Plaintiff and Plaintiff's counsel in connection with this action;

f.   an award for declaratory, equitable and injunctive relief enjoining NIBCO from continuing to pursue the policies, acts and practices described in this Complaint; and

g.   such other and further relief as the Court deems just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES**

Dated: October 4, 2018

          **THE SULTZER LAW GROUP P.C.**

          Jason P. Sultzer /s/

By: _____
          Jason P. Sultzer, Esq.
          85 Civic Center Plaza, Suite 104
          Poughkeepsie, NY 12601
          Tel: (845) 483-7100
          Fax: (888) 749-7747
          sultzerj@thesultzerlawgroup.com

          **LEEDS BROWN LAW, P.C.**

          Jeffrey Brown /s/

By: _____
          Jeffrey Brown, Esq.
          One Old Country Road, Suite 347
          Carle Place, NY 11514
          Tel: (516) 873-9550
          jbrown@leedsbrownlaw.com